UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH MURPHY, Individually and as Next Friend of MINOR CHILD A, Plaintiffs, | : : : : |
| v. | : 3:10-cv-278 (CFD) |
| TOWN OF WALLINGFORD, WALLINGFORD BOARD OF EDUCATION, DALE WILSON, RICHARD PIZZONIA, and JANICE LAUTIER, Defendants. | : : : : : : |

## RULING ON MOTION TO DISMISS

On February 4, 2010, the plaintiffs, Deborah Murphy, individually and as parent and next friend of Minor Child A ("A"),[1] filed a nine-count complaint in the Connecticut Superior Court alleging violations of Title VI of the Civil Rights Act of 1964, First Amendment freedom of speech, due process and equal protection, and state common law claims for intentional infliction of emotional distress and negligence. The defendants are the Town of Wallingford, the Wallingford Board of Education, Dale Wilson (Wallingford's Superintendent of Schools), Richard Pizzonia (Principal of Pond Hill School in Wallingford), and Janice Lautier (Wallingford's Director of Pupil Personnel Services) (collectively, the "defendants"). On

---

[1] Although the plaintiffs have not formally requested the Court's permission to refer to Minor Child A pseudonymously, the Court finds that it is appropriate to proceed anonymously. See Doe I v. Individuals, 561 F. Supp. 2d 249, 257 (D. Conn. 2008) (noting that "[a] party may proceed anonymously only after demonstrating a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings" (internal quotations omitted)); see also Fed. R. Civ. P. 10(a) (stating that a complaint must "include the names of all the parties").

-1-

February 25, 2010, the defendants removed the case to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

The defendants have moved to dismiss all counts of the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The defendants have also moved to dismiss Count Two in its entirety, and Counts One, Four, Five, and Six, in part, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the defendants' motion to dismiss for lack of subject matter jurisdiction is granted and the defendants' motion to dismiss for failure to state a claim is denied without prejudice.

## I.     Factual Background[2]

Deborah Murphy resides in Wallingford. She has an Hispanic daughter, A, who attended the Pond Hill School, a public school located in Wallingford.

On November 21, 2007, the defendants referred A for "psycho educational and speech and language evaluation for the purpose of identifying her as a Special Education student." Murphy and her husband did not consent to the referral because they believed that there was no basis for it. The defendants allegedly told Murphy that if she and her husband did not consent to the evaluation, "things will get ugly."

The defendants subsequently tried again to perform neuropsychological testing of A, claiming that she had social, emotional, and behavioral issues. Murphy and her husband,

---

[2] These facts are taken from the allegations of the plaintiffs' complaint. The allegations must be assumed true for the purpose of resolving the motion to dismiss.

however, continued to refuse consent.[3] Murphy alleges that, in retaliation, the defendants subjected A to discrimination and harassment based on her ethnicity. Murphy also claims that Hispanic students only comprise about 7% of the student population in the Town of Wallingford and 9.8% of the student population of the Pond Hill School.

Due to the alleged discrimination and retaliation against A, Murphy made several written and oral complaints to the defendants. These complaints, however, were allegedly either not answered at all or not answered to Murphy's satisfaction. Murphy claims that this course of conduct by the defendants is not unique; she alleges that the defendants also discriminated and harassed A's older siblings based on their ethnicity.

On March 19, 2009, Murphy filed a written complaint with the school stating, among other things, that the defendants were using the special education testing "as a weapon rather than a tool for helping [A]." Murphy and her husband subsequently removed A from the Pond Hill School and enrolled her in private school, at their own cost. A is allegedly doing well in her present school and has not been designated for special education testing there.

Murphy now sues the defendants for their actions against A, seeking damages that include the "loss of the benefit of a [sic] education at no cost." Murphy alleges that, pursuant to 42 U.S.C. § 1983, Dale Wilson, Richard Pizzonia, and Janice Lautier violated A's rights to equal protection and due process as provided by the Fourteenth Amendment (Counts Four, Five, and Six). Murphy also alleges the following: the defendants deprived A of her rights pursuant to pursuant to 42 U.S.C. § 2000d, Title VI, (Count One); the defendants are liable for intentional

---

[3] Murphy alleged requested documentation from the defendants regarding A's need for special education. The defendants claim that they provided Murphy with the requested documents, but Murphy disagrees.

infliction of emotional distress (Count Two); the defendants are liable for violating Murphy's right to freedom of speech as provided by the First Amendment (Count Three); the defendants are liable for negligent supervision of the Pond Hill School staff (Count Seven); and the Board of Education and Town of Wallingford are liable pursuant to the Monell doctrine under 42 U.S.C. § 1983 (Counts Eight and Nine).

**II.     Discussion**

The defendants seek to dismiss the plaintiffs' claims for lack of subject matter jurisdiction.[4]  They contend that the plaintiffs have not exhausted their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction has the burden of establishing by a preponderance of the evidence that jurisdiction exists.  See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.  See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  When considering a motion to dismiss for lack

---

[4] When a party moves to dismiss for lack of subject matter jurisdiction in addition to other reasons, the court considers the Rule 12(b)(1) challenge first since if there is no subject matter jurisdiction, the additional defenses and objections raised become moot and do not need to be determined.  See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

of subject matter jurisdiction, the court accepts as true all material factual allegations in the complaint, but no argumentative inferences are drawn in the plaintiff's favor.  See Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, 968 F.2d 196, 198 (2d Cir. 1992).

The IDEA mandates federal grants to states to provide disabled children with a "free and appropriate public education" in the least restrictive appropriate environment.  See 20 U.S.C. §§ 1400(d)(1)(A), 1401(8), 1411(a)(1) & 1412(a)(5)(A).  The IDEA's "primary purpose is to ensure that all children with disabilities receive a 'free appropriate public education,' which emphasizes special education and related services designed to meet their unique needs and to assure that the rights of children with disabilities and their parents or guardians are protected." Mrs. M. v. Bridgeport Bd. of Educ., 96 F. Supp. 2d 124, 128 (D. Conn. 2000) (citing 20 U.S.C. § 1400(c)).

The IDEA statutory framework includes extensive administrative procedures that a plaintiff must exhaust before pursuing a claim based on the IDEA in state or federal court.  See 20 U.S.C. § 1415(l); see also Karlen ex rel. J.K. v. Westport Bd. of Educ., 638 F. Supp. 2d 293, 299 (D. Conn. 2009) ("[C]laims that are founded on conduct mandated by [the] IDEA may not be pursued before the administrative remedies provided for in the statute have been exhausted."). The present case before the Court is unique from most IDEA litigation.  Typically, parents of disabled children file suit under the IDEA claiming that the school failed to properly identify, evaluate, and/or provide special education services to their child, thereby depriving their child of a free appropriate public education.  Here, in contrast, Murphy claims that her daughter is *not* disabled and should *not* be afforded special education services, and should not even have been identified for evaluation for such services.  Consequently, the plaintiffs argue that their claims are brought on the basis of race, not disability; therefore, the plaintiffs contend that they are not

seeking relief under the IDEA and should not be required to exhaust their administrative remedies under that act. This Court has held, however, that "[t]o the extent the complaint could be construed to allege claims under the IDEA, even though such claims are disavowed by Plaintiff or cloaked in legal theories distinct from IDEA," the plaintiff must exhaust the IDEA's administrative remedies. See DiStiso v. Town of Wolcott, No. 3:05cv01910, 2006 WL 3355174, at *5 (D. Conn. Nov. 17, 2006); see Karlen, 638 F. Supp. 2d at 300; Hope v. Cortines, 872 F. Supp. 14 (E.D.N.Y.), aff'd, 69 F.3d 687 (2d Cir. 1995). Thus, even if the plaintiffs in this case maintain that their claims are founded on race and not brought pursuant to the IDEA, if a fair reading of the plaintiffs' complaint indicates claims under the IDEA, administrative exhaustion is required.

The principal issue between Murphy and the defendants is the identification and evaluation of A as a special education student. Pursuant to the IDEA statutory process, public schools are under a duty to identify children that may be in need of special education. Specifically, any local education agency that receives federal funding under the IDEA must fulfill its "Child Find" obligation. See 20 U.S.C. § 1412(a)(3)(A); see also A.P. ex rel. Powers v. Woodstock Bd. of Educ., 572 F. Supp. 2d 221, 224–25 (D. Conn. 2008). Under this "Child Find" obligation, a school must identify, locate, and evaluate "all children with disabilities . . . who are in need of special education and related services." 20 U.S.C. § 1412(a)(3)(A). Given the importance of identifying disabled children and providing those children with special education services, the "Child Find" obligation even extends to children who are suspected of having a disability, despite that the children may be progressing from grade to grade in an acceptable manner. See 34 C.F.R. § 300.111(c)(1); Reg'l Sch. Dist. No. 9 Bd. of Educ. v. Mr. &

Mrs. M, No. 3:07-CV-01484, 2009 WL 2514064, at *8 (D. Conn. Aug. 7, 2009).  Once a school has "reason to suspect a disability," the school must conduct an evaluation of the child within a reasonable time.  See Reg'l Sch. Dist., 2009 WL 2514064, at *8.

Despite the significant responsibility placed on schools to initiate the IDEA process—specifically, to identify potentially disabled children—"[t]he core of the statute . . . is the cooperative process that it establishes between parents and schools."  Schaffer v. Weast, 546 U.S. 49, 53 (2005).  While much of the collaboration between schools and parents under the IDEA focuses on the establishment of an "individualized educational plan," parents are also afforded procedural protections and provide input in the identification and evaluation process.

Under the IDEA, a school must obtain informed consent from a child's parents prior to conducting an initial evaluation of a child to determine whether the child has a disability under the IDEA.  See 20 U.S.C. § 1414(a)(1)(D)(i)(I).  If the parent of such child refuses to consent to an initial evaluation under Section 1414(a)(1)(D)(i)(I), "the [school] may pursue the initial evaluation of the child by utilizing the procedures described in [20 U.S.C. § 1415], except to the extent inconsistent with State law relating to such parental consent."  After the parents of a child refuse to consent to an initial evaluation of their child, a school may, pursuant to 20 U.S.C. §§ 1415(b)(6)(A), 1415(f), file a complaint and request an impartial due process hearing "with respect to any matter relating to the identification, evaluation, or educational placement of the child."  Here, after allegedly having reason to suspect that A may be disabled and require special education services, the defendants requested consent from Murphy and her husband to evaluate their daughter.  Murphy and her husband, however, believed that A was not disabled and refused to give their consent.  Despite the defendants' allegedly "persistent" efforts to identify A as

disabled, Murphy and her husband continued to refuse consent. Prior to the defendants initiating an administrative complaint and impartial due process hearing under 20 U.S.C. § 1415 (as provided for by 20 U.S.C. § 1414(a)(D)(ii)(I)), Murphy and her husband removed A from the Pond Hill School and enrolled her in a private school.

This Court's decision in DiStiso v. Town of Wolcott is particularly instructive in the context here. In DiStiso, the plaintiff brought suit on behalf of her son, claiming that the public school falsely accused her son of having neurological problems and insisted on classifying him as a special education student because of his race. See DiStiso, 2006 WL 3355174, at *1. Like Murphy, the plaintiff in DiStiso claimed that she did not have to exhaust the IDEA's administrative remedies because her claims were founded on racial discrimination, not on disability. See id. at *3. The DiStiso court, however, rejected "[s]uch a simplistic approach" and found that although the plaintiff disagreed with the school's conclusion that her son was disabled, the IDEA administrative process was triggered when the school tried to evaluate her son for special education placement. See id. at *4.

The fact that the plaintiffs here seek damages from the defendants for the cost of A's private schooling is important to this analysis. It is not clear from the complaint whether the defendants opted to not pursue an administrative complaint and impartial due process hearing or whether Murphy and her husband removed A from the Pond Hill School prior to the defendants having an opportunity to pursue such administrative action.[5] In either scenario,

---

[5] 20 U.S.C. § 1414(a)(D)(ii)(I) unequivocally states that the school "may" pursue the initial evaluation of the child under 20 U.S.C. § 1415.

Murphy and her husband are not entitled to seek damages under the IDEA for the loss of an "appropriate public education" without first exhausting their administrative remedies.

Had Murphy and her husband left A in the Pond Hill School after refusing consent for an initial evaluation, A would not have been forced to receive special education services. Even if the defendants initiated administrative action under the IDEA to override the consent of Murphy and her husband and ultimately were able to evaluate A, the IDEA also requires parental consent for a child to receive special education services. See 20 U.S.C. § 1414(a)(D)(i)(II) ("An agency that is responsible for making a free appropriate public education available to a child with a disability . . . shall seek to obtain informed consent from the parent of such child before providing special education and related services to the child."). If the parents of a child refuse consent for special education services under the IDEA, the school cannot provide such services to the child *and* is not permitted to utilize the administrative procedures set forth in 20 U.S.C. § 1415. Thus, had Murphy and her husband left A in the Pond Hill School, they would not have a cognizable claim under the IDEA.

In this case, however, Murphy and her husband removed A from the Pond Hill School, enrolled her in a private school, and now seek damages for the cost of A's private school education. If the plaintiffs were not required to exhaust their administrative remedies (here, keep A in school and allow the school to pursue an administrative review, if so desired), the balance that the IDEA's collaborative process created would be significantly altered; schools would lose an effective tool in fulfilling their "Child Find" obligations while parents would be empowered to both refuse consent for their child to be evaluated *and* to recover for the loss of the "free appropriate public education" that the school was trying to provide the child when it sought to

evaluate the student for special education services.  Cf. DiStiso, 2006 WL 3355174, at *4 ("If, without exhausting the statutory procedures, a school system simply abandoned the process in response to a parent's objections, the school system may fail to fulfill its obligations to provide special education for a child who is entitled to one.").  Such an outcome is not consistent with the underlying purpose of the IDEA and would substantially hinder schools in their efforts to carry out the objectives set forth in the IDEA.  The responsibilities and resulting financial obligations of local school districts under the IDEA are difficult enough.  Permitting parents to bypass the evaluation process and then subsequently seek payment for private school costs would violate the IDEA.[6]  Consequently, this Court concludes that the portion of the plaintiffs' complaint seeking damages for the lack of a "free appropriate public education"—the costs of the private school for A—must be construed as seeking relief under the IDEA.  Further, the Court finds that administrative remedies were available under the IDEA and the plaintiffs were therefore required to exhaust those remedies if they wished to pursue relief under the IDEA in federal court.

Having determined that the IDEA's administrative exhaustion requirement is applicable to the plaintiffs' claims, the Court must consider whether any of the three recognized exceptions to the IDEA's exhaustion requirement apply.  Exhaustion under the IDEA is not required when "(1) it would be futile to use the due process procedures [required by the IDEA] . . .; (2) an

---

[6] In addition to the risk of double recovery, had A remained in the Pond Hill School and the defendants initiated administrative action, this Court would have the benefit of an administrative record to assist the Court in adjudicating this action.  See Polera v. Bd. of Educ., 288 F.3d 478, 487 (2d Cir. 2002) ("Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." (internal quotations omitted))

agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; [or] (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir. 1987). Here, the plaintiffs allege that it would be futile to comply with administrative procedures in the IDEA, including a due process hearing. The plaintiffs do not, however, explain why administrative exhaustion would be futile. The plaintiffs only assert that a due process hearing would likely result in the evaluation of A—a result Murphy does not wish. Because there is no plausible allegation that the school's procedures and policies with respect to the IDEA due process hearing are inadequate or unfair, the Court cannot conclude that it would have been futile for the plaintiffs to exhaust their administrative remedies.

Finally, although the plaintiffs seek monetary damages other than those available under the IDEA, a plaintiff's request for such monetary relief does not abrogate the IDEA's exhaustion requirements. See Polera, 288 F.3d at 487–88; DiStiso, 2006 WL 3355174, at *4 ("The fact that Plaintiff seeks money damages, relief not available under IDEA, does not remove [plaintiff's] case from the exhaustion requirement because the conduct on which some of her claims are based was undertaken by Defendants in attempted compliance with the IDEA.").

Because Murphy seeks to redress her daughter's loss of "the benefit of a [sic] education at no cost" and has not exhausted the administrative remedies provided for in the IDEA, this Court lacks subject matter jurisdiction under any of the plaintiffs' claims that could be construed to be seeking relief under the IDEA. Unlike in Karlen or DiStiso, where the plaintiffs' alleged claims

were based on conduct independent from the IDEA process (in addition to their IDEA claims),[7] all of the plaintiffs' claims in this case—the plaintiffs' Title VI claim, § 1983 claims, intentional infliction of emotional distress claim, First Amendment claim, Monell claims, and negligent supervision claim—arise from the same nucleus of facts and relate to conduct encompassed and mandated by the IDEA. See Karlen, 638 F. Supp. 2d at 300 ("[T]his Court lacks subject matter jurisdiction for any claims arising from the denial of educational services or environments or the provision of insufficient educational services . . . irrespective of whether the alleged conduct was caused by racial discrimination or animus. . . . [T]he Court does have jurisdiction to consider claims based on conduct other than that required by IDEA."); Hope, 872 F. Supp. At 19–20 (discussing the application of the IDEA's exhaustion requirement to Section 1983 claims); DiStiso, 2006 WL 3355174, at *4–5 (finding that the IDEA's exhaustion requirement did not apply to the plaintiff's claims that were "based on conduct other than that pursuant to the IDEA," like the plaintiff's claim of racial discrimination based on the conduct of the disabled student's classmates); see also Mrs. M, 96 F. Supp. 2d at 129 n.8 (noting that in addition to the plaintiffs' IDEA claims, the plaintiffs' Rehabilitation Act, ADA, and equal protection claims were also subject to the IDEA's exhaustion requirement). Accordingly, the Court lacks subject matter

---

[7] For example, in DiStiso, the plaintiffs' alleged violations of equal protection and due process under 42 U.S.C. § 1983 involved racially-motivated harassment and abuse by the disabled child's classmates not properly addressed by the school administration. Because these claims involved alleged conduct not related to the defendants' conduct under the IDEA, the claims survived the defendants' Fed. R. Civ. P. 12(b)(1) challenge for lack of subject matter jurisdiction. See DiStiso, 2006 WL 3355174, at *5–8 .

jurisdiction over all of the plaintiffs' claims and grants the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).[8]

**III.     Conclusion**

Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction [Dkt # 10] is GRANTED, and the defendants' motion to dismiss for failure to state a claim [Dkt # 11] is DENIED, without prejudice.

SO ORDERED this <u>23rd</u> day of March 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE**

---

[8] Because the Court lacks subject matter jurisdiction over the plaintiffs' claims, the Court does not need to address the defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim and denies that motion without prejudice.